IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                              :

MARIA MELENDEZ                       :

         v.                              :   Civil Action No. DKC 14-3636

                                                :

BOARD OF EDUCATION FOR
MONTGOMERY COUNTY                 :

                                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case are: (1) a motion to dismiss or for summary judgment filed by the Board of Education for Montgomery County ("Defendant") (ECF No. 31); (2) a motion to defer or deny summary judgment pursuant to Fed.R.Civ.P. 56(d) filed by Plaintiff Maria Melendez (ECF No. 36); (3) a motion for leave to file a surreply filed by Plaintiff (ECF No. 39); and (4) Defendant's motion to strike Plaintiff's affidavit (ECF No. 41).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to file a surreply filed by Plaintiff will be granted. Defendant's motion to dismiss or for summary judgment will be granted in part and denied in part.

---

[1] Defendant moved for an extension of time to respond to Plaintiff's motion to defer summary judgment. (ECF No. 37). Defendant has since responded to the motion, thus the request will be denied as moot.

Plaintiff's motion to defer or deny summary judgment pursuant to Fed.R.Civ.P. 56(d) will be denied as moot.   Defendant's motion to strike Plaintiff's Rule 56(d) affidavit also will be denied as moot.

**I.   Background**

   **A.   Factual Background**

   The following facts are alleged in the second amended complaint.   Plaintiff began working for Montgomery County Public Schools on October 18, 1993.   (ECF No. 30 ¶ 1).[2]   In November 1997, she was transferred to Albert Einstein High School ("AEHS") as Shift I Building Services Worker.   In approximately April 2010, Tony Hopkins became the new Building Services Manager for AEHS.   (*Id.* ¶ 10).   Plaintiff asserts that three females and three males worked under his supervision.   (*Id.* ¶ 11-12).   The second amended complaint avers that "Mr. Hopkins stated his distaste for working with women in the Building Services Department at Albert Einstein High School."   (*Id.* ¶ 14).   He purportedly lined up all three female workers and informed them that "he did not want three women working [at AEHS] in the morning."   (*Id.* ¶ 13).   Plaintiff asserts that in May 2010, she informed AEHS principal James Fernandez regarding

---

[2] All citations to paragraphs refer to the allegations beginning on page four of the second amended complaint.   (*See* ECF No. 30, at 4).

Mr. Hopkins's comments, but was told that "he's the new boss" and "follow whatever he says." (*Id.* ¶ 16).

Plaintiff further contends that the male building service workers supervised by Mr. Hopkins usually were "tasked with maintaining the exterior premises," but "[i]n order to prove that women were inferior to men as building service workers," Mr. Hopkins apparently assigned to the male workers "tasks inside of the building such as cleaning the bathrooms and sweeping the floors." (*Id.* ¶¶ 28-29). The women, on the other hand, allegedly were "assigned to grueling labor tasks outside of the facility amidst the scorching heat." (*Id.* ¶ 30). The complaint further avers that during the summer of 2010, "Tony Hopkins intentionally positioned security cameras to perform surveillance directly on the three female service workers, including the Plaintiff." (*Id.* ¶ 35). Plaintiff asserts that the female building service workers "began to notice that they were being followed by AEHS' building security cameras while they were performing their job functions." (*Id.* ¶ 42).

Plaintiff also asserts various other actions allegedly taken by Mr. Hopkins, such as: shoving a trash can in Plaintiff's direction, causing it to hit her and severely bruising her arm (*id.* ¶ 67); instructing Plaintiff and the two other female building service workers to lift extremely heavy furniture across school grounds in July 2010 (*id.* ¶ 72);

shutting down the air conditioning in rooms while Plaintiff cleaned in August 2010 (*id.* ¶ 74); filling up trash bags with "reams of toilet paper," taking pictures of each trash bag full of toilet paper, and then questioning why "Plaintiff hadn't taken out the trash for the day" (*id.* ¶¶ 78-79); directing Ms. Melendez to move "extremely dangerous broken furniture out of the cafeteria" in or around May 2011, then himself bringing the furniture back into the cafeteria and "in a rage yell[ing] in her face for not performing the task" (*id.* ¶ 86).

Plaintiff also asserts that despite her complaints to the school principal and the union regarding these acts, nothing was done to remedy the situation. Plaintiff asserts that, at the end of May 2011, Mr. Hopkins recommended that she be placed on a "Performance Improvement Plan," as part of her annual evaluation. (*Id.* ¶ 92). Plaintiff contends that never before had she received such a "negative performance evaluation" and prior to Mr. Hopkins's tenure was praised for her exceptional job performance. (*Id.* ¶¶ 93-96). Finally, Plaintiff recounts an incident when she brought a water bottle to work, which she believes had been tampered with. She states:

> 123. Ms. Melendez poured some of the water on her hand and instantly felt something irregular and slippery. She placed the bottle by her nose and another substance that she knew was not just water.

4

124. After Plaintiff discovered that her water bottle had been tampered with, she immediately threw out the bottle and reported the incident to the police.

125. The police did not follow up with an investigation because Ms. Melendez had no evidence of the tampered bottle.

Plaintiff alleges that in or around July 2011, "after the water bottle incident and out of absolute fear [for] her life, [she] immediately left Albert Einstein High School." (*Id.* ¶ 126). Plaintiff asserts that she sought treatment for severe emotional distress in July 2011 "caused by the extreme discrimination, disparate treatment and hostile work environment conditions at Albert Einstein High School." (*Id.* ¶ 127).

### B. Procedural Background

Plaintiff filed a *pro se* complaint in the Circuit Court for Montgomery County, Maryland on August 19, 2014 naming Albert Einstein High School as a defendant. (ECF No. 2). Plaintiff subsequently retained counsel and filed an amended complaint naming Montgomery County Public Schools ("MCPS") as an additional defendant. (ECF No. 11). Defendants filed a notice of removal on November 17, 2014, citing federal question jurisdiction. (ECF No. 1). On November 21, 2014, Defendants moved to dismiss Plaintiff's first amended complaint, asserting that neither defendant is a legal entity with the capacity to sue or be sued. Plaintiff filed a response arguing that she is entitled to amend her complaint pursuant to Fed.R.Civ.P. 15(c)

in order to correct any harmless mistake and name the Board of Education for Montgomery County as a party to this action. Concomitantly, Plaintiff moved to amend her first amended complaint. The court issued an order on December 11, 2014 granting Plaintiff's motion for leave to amend the complaint and denying as moot the motion to dismiss. (ECF No. 29). Plaintiff was directed to file a second amended complaint to substitute the Board of Education for Montgomery County as a defendant.

Plaintiff subsequently filed a second amended complaint. (ECF No. 30). The second amended complaint asserts: sex discrimination (count I); retaliation (count II); disparate treatment (count III); and hostile work environment (count IV) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The complaint also labels as separate counts: adverse employment action (count V);[3] violation of Maryland's Fair Employment Practices Act (count VI); violation of Section 5 of Equal Employment Opportunity, Montgomery County Personnel Regulations (count VII); wrongful termination in violation of public policy (count VIII); negligence (count IX); negligent and wanton hiring, retention and supervision (count X); vicarious

---

[3] Plaintiff labels Count V of the second amended complaint as "adverse employment action under Title VII." (ECF No. 30, at 26). An "adverse employment action" is not a separate cause of action under the statute. It appears that at least some of the allegations in Count V are asserted in support of the other causes of action contained in the second amended complaint.

liability (count XI); intrusion upon Plaintiff's seclusion or solitude (count XII); and invasion of privacy (count XIII).

Defendant moved to dismiss or for summary judgment on December 29, 2014. (ECF No. 31). Plaintiff opposed the motion (ECF No. 32), and Defendant replied (ECF No. 33). Plaintiff subsequently filed two supplements to her opposition, which are identical. (ECF Nos. 34 & 35). Then, on February 3, 2015, Plaintiff filed a motion requesting that the court defer or deny summary judgment pursuant to Fed.R.Civ.P. 56(d) and requested time to conduct discovery. (ECF No. 36). Plaintiff submitted an affidavit as an exhibit to her motion. (ECF No. 36-1). Defendant opposed this motion and moved to strike the affidavit. (ECF No. 41). Plaintiff filed a response. (ECF No. 43).

Finally, Plaintiff moved for leave to file a surreply in connection with Defendant's motion to dismiss or for summary judgment. (ECF No. 39). Defendant opposed the motion (ECF No. 42), and Plaintiff replied (ECF No. 44).

## II. Analysis

### A.   Motion for Leave to File a Surreply

After Defendant's motion to dismiss or for summary judgment was fully briefed, Plaintiff moved for leave to file a surreply and attached a proposed surreply to her motion. (ECF No. 39). Local Rule 105.2.a states: "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." The

court may permit a surreply when a party would not otherwise have an opportunity to respond to arguments raised for the first time in the opposing party's reply. *See Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003).

Plaintiff argues that Defendant submitted new exhibits with its reply memorandum, which Defendant itself concedes were obtained via a FOIA request on January 20, 2015, subsequent to the filing of Defendant's dispositive motion. (*See* ECF No. 33, at 3). Much of the parties' dispute concerns the purported withdrawal by Plaintiff of her EEOC charge and whether she did or did not inform the EEOC that she wished to close her EEOC case. The exhibits included for the first time with Defendant's reply memorandum purport to show that Ms. Melendez did in fact communicate to several EEOC employees her intention to close the case. Plaintiff asserts that her surreply should be accepted because she did not have an opportunity to respond to the arguments made in Defendant's reply which rely on the new exhibits. (*See* ECF No. 39, at 3-6).

Plaintiff's surreply will be accepted, but with a caveat that any new arguments raised by her that could have been raised in the opposition will not be considered. As Defendant argues, Plaintiff *herself* raises new arguments in the surreply which could have been raised in her opposition and which do *not* respond to any new argument from Defendant raised for the first

time in its reply.  (ECF No. 42, at 2).  Specifically, Plaintiff asserts that Defendant did not object to the reopening of the EEOC case until after the EEOC completed its investigation and settlement discussions proved futile; Plaintiff argues in the surreply that judicial estoppel, equitable estoppel, laches, and waiver bar Defendant from objecting to the reopening of the case in this litigation.  (*See* ECF No. 39-1, at 9-12; *see also* ECF No. 42, at 2 ("[T]hese are arguments which could have, and should have, been raised in Plaintiff's original [opposition] because Plaintiff has quite obviously always been aware of the Defendant's participation in the EEOC investigation after the EEOC improperly reopened Plaintiff's charge.")).  Because these arguments could have been but were not raised in Plaintiff's opposition, they will not be considered.  Moreover, any new arguments from Plaintiff raised for the first time in the surreply pertaining to the state law claims also will not be considered for the same reason.

**B.   Defendant's Motion to Dismiss or for Summary Judgment**

**1.   Standard of Review**

Both parties rely on materials outside the four corners of the complaint, thus the motion will be treated as one for summary judgment.  A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

*See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party  would have the burden of proof to avoid summary judgment.  *Celotex,* 477 U.S. at 322–23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (*quoting Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## 2.   Analysis

Defendant argues that the federal claims should be dismissed because Plaintiff failed to exhaust her administrative remedies and the state law claims are barred by the applicable statute of limitations. (ECF No. 31).

### a.   Administrative Exhaustion

On January 11, 2012, the Equal Employment Opportunity Commission ("EEOC") forwarded to the Board of Education of

11

Montgomery County ("MCPS") a notice of charge of discrimination brought by Plaintiff, which alleged discrimination on the basis of race, sex, and national origin. (ECF No. 31-3, EEOC Charge No. 531-2012-00599). The EEOC subsequently received another charge of discrimination from Plaintiff under the same EEOC charge number, this time asserting sex discrimination and retaliation, which it also forwarded to MCPS on February 21, 2012. (ECF No. 31-4). On April 6, 2012, the EEOC forwarded to MCPS a notification letter stating:

> *This is to inform you that the charge cited above has been withdrawn at the request of the Charging Party.*
>
> The Commission has approved this withdrawal and this terminates any further processing of this matter. Such withdrawal does not affect the processing of any other charge, including but not limited to, a Commissioner Charge, or a charge, the allegations of which are like or related to the individual allegations settled.

(ECF No. 31-5) (emphasis added). Almost one year later, on March 15, 2013, the EEOC sent to Plaintiff and the MCPS a notice of reopening:

> Based on additional information obtained, a decision has been made to rescind the withdrawal notices recently issued with regard to the above-referenced charge of discrimination.
>
> Pursuant to the Equal Employment Opportunity Commission's Rules and Regulations, I hereby give notice of my intent to reopen and continue the investigation. This is to

> notify the parties that the withdrawal
> issued in the cited charge has been revoked.
>
> A U.S. Equal Employment Opportunity
> Commission representative will soon contact
> the parties concerning further
> investigation.

(ECF No. 31-6). The letter was signed by Rosemarie Rhodes, Director with the Baltimore Field Office at the EEOC. On May 20, 2014, the Department of Justice issued a right-to-sue letter to Plaintiff. (ECF No. 31-7).

Defendant argues that the first five counts of the second amended complaint alleging violations of Title VII should be dismissed on failure to exhaust grounds based on timeliness. Specifically, Defendant contends:

> For the purpose of this Motion, the issue is
> not whether Plaintiff timely filed with the
> EEOC, or whether Plaintiff filed her civil
> suit within 90 days of receipt of the right-
> to-sue notice. Defendant's untimeliness
> argument hinges on the fact that Plaintiff
> withdrew her discrimination charge with the
> EEOC, that Plaintiff failed to re-file her
> charge of discrimination within the 300-day
> window from the last date of alleged
> discrimination, and that the EEOC lacked the
> authority to unilaterally reopen the
> withdrawn charge that led to the right-to-
> sue letter issued in 2014. [] [B]ecause the
> EEOC lacked the authority to reopen the
> charges, the right-to-sue notice issued on
> March 13, 2014,[4] is a legal nullity.

(ECF No. 31-1, at 8).

_____

[4] The notice regarding reopening of the case was issued on March 13, 2013, but the right to sue letter was issued on May 20, 2014.

Title VII requires a plaintiff to file an EEOC charge within a prescribed limitations period. 42 U.S.C. § 2000e-5(e)(1). In deferral states such as Maryland, that limitations period is 300 days from the date of the allegedly discriminatory act.[5] *Id.* Title VII also requires a plaintiff to bring a discrimination claim within 90 days from the date of receipt of the right-to-sue letter. 42 U.S.C. § 2000e-5(f). "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

In her opposition, Plaintiff denies that she ever withdrew or authorized anyone to withdraw her discrimination charge with the EEOC. (ECF No. 32, at 2). Plaintiff submits an affidavit from Rosemarie Rhodes, Director of the Baltimore Field Office with the EEOC, who states, in relevant part:

> C. According to the records maintained by the Baltimore Field Office, in or about April 2012, an EEOC Call Center employee noted that based on a telephone conversation with Maria Melendez, she wished to withdraw EEOC Charge 531-2012-00599. Upon receipt of

---

[5] A "deferral state" is one that has its own state or local agency with authority to grant or seek relief from employment discrimination or to institute criminal proceedings on behalf of the alleged victim. 42 U.S.C. § 2000e-5(e)(1). The Maryland Commission on Civil Rights ("MCCR"), formerly known as the Maryland Commission on Human Rights, is the applicable state enforcement agency. *Prelich v. Med. Resources, Inc.*, 813 F.Supp.2d 654, 661-62 (D.Md. 2011).

that information, Gerald Kiel, then Director of the Baltimore Field Office advised Montgomery County Public Schools' HR Compliance representative of the withdrawal and the Baltimore Field Office discontinued any further processing of the charge.

D. In or about February-March 2013, I was contacted by Maria Melendez regarding the status of two charges of discrimination, including EEOC Charge 531-2012-00599. When I informed her that both charges had been withdrawn at her request, *she denied that she had made any such request.*

E. At that juncture, I reviewed the file and determined that there had been a misunderstanding of Ms. Melendez's intent when she was calling the EEOC Call Center to inquire on the status of her charges and the reasons for the delays in the processing of her charges. Other than the note from the EEOC Call Center employee, there was no other indication or documentation in the file that Ms. Melendez requested a withdrawal of charge.

(ECF No. 32-1, at 1-2) (emphasis added).  Plaintiff also filed a supplement, albeit without explanation, showing the following email from Pamela Lichtenberg to Judy Cassell and Maria Tolentino, EEO investigators:

Charge was closed with a Y2 04/06/12.  I rec[eived] a voice mail message from WFO employee, Trent McCrath, who spoke with Ms. Melendez today.  *She claims she did not know her[] charge was closed and that she did not authorize a withdrawal.*  She thought her charge was in "back-log."  Maria you have several notes in IMS about speaking with her and Judy you have one, too.

(ECF No. 34) (emphasis added).

15

Defendant relies on the district court's decision in *Lewis v. Norfolk Southern Corp.*, 271 F.2d 807 (E.D.Va. 2003), for the proposition that the EEOC does not have authority to reconsider a withdrawal of an EEOC charge and reopen the case.   Unlike here, it was uncontested in *Lewis* that plaintiff withdrew his charge after he filed it with the EEOC.   Almost seven months after plaintiff withdrew his charge and more than 300 days following the alleged discriminatory acts, "the EEOC unilaterally informed the plaintiff it was reconsidering the charge and revoking its approval of the withdrawal request." *Lewis*, 271 F.Supp.2d at 814.   The court reasoned that "[t]here is nothing authorizing *reconsideration of a withdrawn charge*, covered under 29 C.F.R. § 1601.10, once the EEOC has accepted the withdrawal and terminated proceedings."   *Id.* at 815 (emphasis added).   29 C.F.R. § 1601.10 states:

> A charge filed by or on behalf of a person claiming to be aggrieved *may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission.* The Commission hereby delegates authority to District Directors, Field Directors, Area Directors, Local Directors, the Director of the Office of Field Programs and the Director of Field Management Programs, or their designees, to grant consent to a request to withdraw a charge, other than a Commissioner charge, where the withdrawal of the charge will not defeat the purposes of title VII, the ADA, or GINA.

(emphasis added).

16

Here, Plaintiff disputes that she ever withdrew the charge and submits an affidavit from Ms. Rhodes stating that the withdrawal was based on a misunderstanding of Ms. Melendez's intent. *See, e.g. Hale v. Anton Paar USA, Inc.*, Civ. Action No. 3:07CV435, 2008 WL 170460, at *3 (E.D.Va. Jan. 18, 2008) ("Without commenting on the merits of the court's holding in *Lewis*, this case is distinguishable in that Hale did not withdraw his charge. Further, assuming *arguendo* that the EEOC lacked authority to reconsider the charge, the EEOC's error should not be imputed to Hale."). Defendant argues that the affidavit from Ms. Rhodes does not comply with Fed.R.Civ.P. 56(c)(4) because she "did not participate in the April 2012 telephone call, had no personal knowledge of the contents of that telephone call and is not competent to testify as to Plaintiff's alleged intent at that (or any) point, and accordingly, her affidavit should be stricken." (ECF No. 33, at 3).

Under Fed.R.Civ.P. 56(c)(4), affidavits used to support or oppose a motion for summary judgment must: be made on personal knowledge; set out facts that would be admissible in evidence; and show that the affiant is competent to testify on the matters stated. Defendant misconstrues the affidavit. Ms. Rhodes's affidavit does not state that she participated in the April 2012 telephone call or that Ms. Melendez did not intend to withdraw

her EEO charge; instead, Ms. Rhodes states in her affidavit that she reviewed the *records* maintained by the Baltimore Field Office which recount the purported conversation that led to the discontinuance of the EEO complaint, and that subsequently she herself spoke with Ms. Melendez, who denied that she requested to withdraw the EEO charge. Ms. Rhodes has personal knowledge of her conversation with Ms. Melendez in February or March 2013 and the records she reviewed in determining that the case should be reopened. Accordingly, the affidavit need not be stricken.

Defendant next argues that the affidavit lacks credibility considering the records Defendant obtained from the EEOC through a FOIA request in January 2015. Specifically, Defendant believes that "[s]everal documents produced by the EEOC directly rebut the contentions made in Ms. Rhodes' affidavit." (*Id.*). Defendant cites notes from Ms. Melendez's EEOC file that it believes show that Plaintiff did withdraw her charge. (*See* ECF No. 33-2, note from Judy Cassell dated April 6, 2012 ("I spoke with Ms. Melendez, and she confirmed that she wants to close EEOC cases; DOL has accepted her claims.")). Defendant also cites a letter, dated April 6, 2012, to Ms. Melendez from Gerald S. Kiel, then Director of the EEOC's Baltimore Office, stating in relevant part: "This is to acknowledge your recent request to withdraw the above referenced charge of discrimination. . . . Your request is hereby granted." (ECF No. 33-3). Plaintiff

apparently did not respond to this letter until she contacted the EEOC in February or March 2013. Defendant argues:

> To the extent Ms. Rhode[s]'s affidavit seeks to assign some type of misunderstanding to an EEOC call center employee, she fails to mention the additional conversation between Plaintiff and Ms. Cassell, or the fact that Plaintiff took no action for more than a year after receiving the letter confirming the withdrawal of her charge. These facts directly rebut that there was any alleged misunderstanding. These facts also make Ms. Rhodes' affirmations rather dubious.

(ECF No. 33, at 5). The court cannot weigh evidence and make credibility determinations on summary judgment, however. *See, e.g., Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435 (4th Cir. 2001) (noting that the court "may not make credibility determinations or weigh the evidence" on summary judgment). Moreover, all inferences must be drawn in the light most favorable to Plaintiff as the non-moving party.[6]

---

[6] Defendant further argues that even if the EEOC miscommunicated with Plaintiff and she relied on this miscommunication, "there are no facts to support that Plaintiff diligently pursued her charge of discrimination by making any calls or responding to the EEOC's letter until nearly February or March 2013, when Plaintiff's case had been closed for almost a year." (ECF No. 33, at 10). Defendant attaches as an exhibit to its reply brief a letter to Plaintiff, dated April 6, 2012, acknowledging her "recent request to withdraw the above referenced charge of discrimination." (ECF No. 33-3). As explained above, there is a dispute regarding whether the withdrawal resulted from a misunderstanding on the EEOC's part. Moreover, as Plaintiff argues, Defendant apparently participated in the EEO investigation following the reopening of the case for nearly a year, *without* objecting to the reopening. Plaintiff contends that "at no time, before or during the sweeping

Defendant also cites *Walton v. Guidant Sales Corp.*, 417 F.Supp.2d 719 (D.Md. 2006), in arguing against equitable tolling in cases where the EEOC takes no action to mislead a plaintiff. (*See* ECF No. 33, at 9-10).   That case is inapposite, however, because Judge Davis *denied* a pre-discovery motion for summary judgment:

> Guidant filed a pre-discovery motion for summary judgment asserting that Walton had failed properly to exhaust his administrative remedies, i.e., he failed to file a timely charge of discrimination. I denied the pre-discovery motion without prejudice, concluding that Walton had generated a "genuine dispute of material fact as to the question of exhaustion of administrative process" and that Walton had "amassed significantly probative circumstantial and direct evidence that he did timely satisfy the exhaustion requirement, but that the EEOC process broke down." *Letter Order* dated September 27, 2005.

*Walton*, 417 F.Supp.2d at 720.

Moreover, the analysis recently undertaken in *Hansen v. Jones Lang LaSalle Americas, Inc.*, ---F.Supp.3d----, 2015 WL 1927530 (D.Conn. Apr. 28, 2015), applies here.   In that case, the EEOC made an administrative error that led it to conclude that plaintiff's claim had been withdrawn.   Defendant in *Hansen*

---

investigation conducted by the EEOC, did the Defendant ever object to an investigation or ask Ms. Rhodes to reevaluate her decision to reconsider the withdrawn charge. [] Instead, the Defendant fully participated in the EEOC investigation that took well over a year to finalize." (ECF No. 39-1, at 8).

argued that the EEOC had no authority under its own regulations
to reconsider a case closure.   The court rejected defendant's
reasoning:

> Without disputing that the EEOC had no
> lawful authority to deem plaintiff's claim
> to be withdrawn, defendant contends that
> [the] EEOC had no authority under its own
> regulations to re-consider this wrongful
> action.  This argument has no merit, because
> "[i]t is widely accepted that an agency may,
> on its own initiative, reconsider its
> interim or even its final decisions,
> regardless of whether the applicable statute
> and agency regulations expressly provide for
> such review." *Dun & Bradstreet Corp. Found.
> v. U.S. Postal Serv.*, 946 F.2d 189, 193 (2[d]
> Cir. 1991). *In view of the fact that the
> EEOC plainly had no authority to deem the
> claim withdrawn in the first place, it would
> border on the bizarre to conclude that the
> EEOC was powerless to correct its error.*

*Id.* at *2 (emphasis added).

Based on the foregoing, the motion for summary judgment
will be denied as to counts I through V.[7]

---

[7] Plaintiff also separately filed a motion to defer or deny
summary judgment to allow for discovery pursuant to Fed.R.Civ.P.
56(d).  (*See* ECF No. 36).  Plaintiff's counsel submitted a Rule
56(d) affidavit from Ms. Melendez.   The affidavit does *not*
address Defendant's motion to dismiss or for summary judgment as
it relates to the state law counts, focusing exclusively on the
need for discovery concerning the administrative exhaustion
issue.  Because the case will proceed to the discovery phase on
the federal claims for the reasons stated, Plaintiff's request
will be denied as moot.   Consequently, Defendant's motion to
strike the Rule 56(d) affidavit, (ECF No. 41), also will be
denied as moot.

b.   **State Law Claims**

Defendant argues that the statute of limitations has run on Plaintiff's state law claims.[8]

Count VI of the second amended complaint alleges violations of Maryland's Fair Employment Practices Act ("MFEPA").   MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc.*, RWT-09-02402, 2011 WL 1231029, at *6 (D.Md. Mar. 29, 2011).   MFEPA permits a litigant to bring a civil action if: (1) she files a timely administrative charge; (2) at least 180 days have elapsed since the filing of the administrative charge; *and* (3) the civil action is filed within two years after the alleged unlawful employment practice occurred.   Md. Code. Ann., State Gov't § 20-1013(a).   Here, the second amended complaint avers that "[i]n or around July 2011, after the water bottle incident and out of absolute fear of her life, Plaintiff immediately left Albert Einstein High School."   (ECF No. 30 ¶ 126).   Defendant attaches a notice of resignation to its motion to dismiss or for summary judgment showing that Plaintiff resigned on July 19, 2011, citing "home responsibilities" as a reason for resignation.   (ECF No. 31-2).   The purported

---

[8] Defendant also argues that counts six and seven of the second amended complaint are barred for the same reasons as the federal claims on failure to exhaust grounds.   As explained above, summary judgment will not be granted on failure to exhaust grounds considering the dispute surrounding the withdrawal of the EEO charge.

constructive   discharge   in   July   2011   is   the   most   recent
discriminatory   act   alleged   in   the   second   amended   complaint.
Plaintiff   did   not   file   her   complaint   in   the   Circuit   Court   for
Montgomery   County   until   August   19,   2014,   however,   approximately
*three* years later.   (*See* ECF No. 2).

Plaintiff   broadly   asserts   that   "[i]f   the   EEOC   did   not
erroneously   withdraw   the   Plaintiff's   charge,   it   is   presumed   that
a   proper   investigation   would   have   been   completed   and   thus   the
Plaintiff,   []   would   have   been   able   to   properly   assert   Counts   6
and   7   within   the   applicable   statute   of   limitations."   (ECF   No.
32,   at   9).   Plaintiff   provides   no   explanation,   however,   for   why
she   needed   to   wait   for   any   EEOC   action   before   pursuing   her   state
law   claims   and   her   argument   is   unavailing.   Judge   Hollander
recently   rejected   a   similar   argument   as   Plaintiff   lodges   here   in
*McCleary-Evans v. Maryland Dept. of Transp.*,   Civ.   Action   No.
ELH-12-1550,   2015   WL   1285325,   at   *22-23   (D.Md.   Mar.   20,   2015):

> McCleary-Evans   argues   in   her   Opposition
> that   "the   statute's   two-year   limitations
> provision   has   no   application"   because
> plaintiff's   claims   "are   subject   to   the
> administrative   requirement   otherwise
> applicable   to   Title   VII   and   the   related
> administrative   exhaustion   requirements   of   .
> .   .   the   ADEA   and   the   ADA."   []   *Although it
> is   true   that   plaintiff's   MFEPA   claims   are
> subject   to   an   administrative   filing
> requirement,   S.G.   §   20-1013(a)(1),   this
> requirement   is   in   addition   to   the
> requirement   that   any   "civil   action"   be   filed
> "within   2   years   after   the   alleged   unlawful*

> *employment practice occurred.*" S.G. § 20-
> 1013(a)(3).
>
>     As quoted above, the statute provides
> three requirements, joined by the word
> "and," that a complainant must satisfy in
> order to pursue a civil action. Under well
> settled principles of statutory
> construction, the use of the word "and"
> between these three requirements
> *unambiguously commands that a complainant
> meet all three requirements, not just any
> one of them.*

(emphasis added). As Defendant argues, Plaintiff was required

to file a timely MFEPA claim irrespective of any action by the

EEOC. Accordingly, the MFEPA claim is time-barred.

In count VII of the second amended complaint, Plaintiff

asserts violations of "Section 5 of Equal Employment

Opportunity, Montgomery County Personnel Regulations." (ECF No.

30, at 28). The Montgomery County Personnel Regulations

generally apply to "employees of the County government." Md.

Personnel Regs. § 2-2.[9] Md. Code Ann., Educ. § 3-104 states that

"[e]ach county board is a body politic and corporate by the name

of the Board of Education of ... County" and "[m]ay sue and be

sued." *Id.* §§ 3-104(a) & (b)(2). Plaintiff erroneously asserts

in her opposition that "[t]here is [] no dispute that Ms.

Melendez was an employee of Montgomery County Government and

therefore Count 7 cannot be dismissed." (ECF No. 32, at 10).

---

    [9] The Montgomery County Personnel Regulations are available
on the County's website: http://www.montgomerycountymd.gov/ohr/
labor/regulation.html (last visited May 18, 2015).

Plaintiff was employed by the Board of Education of Montgomery County, which is not the same as an employee of the County government. Plaintiff requests that if the Court were inclined to dismiss the Section 5 claim, that she be permitted to amend the complaint to "assert a claim pursuant [to] Title 20 of the State Government Article." (*Id.*). For the reasons explained above, however, any claim pursuant to Title 20 is time-barred. Accordingly, summary judgment will be granted as to Count VII too.

The following state claims remain in the second amended complaint: wrongful termination; negligence; negligent and wanton hiring; vicarious liability; intrusion upon Plaintiff's seclusion or solitude; and invasion of privacy (counts VIII through XIII). The three-year statute of limitations applies to these claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). Plaintiff asserts in her oppositions that counts VIII through XIII are not time-barred because "[t]he EEOC's misleading error resulted in almost a year delay severely prejudicing the Plaintiff's ability to bring forth her state claims immediately after her resignation. Such a harmful error should equitably toll the statute of limitations for her state

claims." (ECF No. 32, at 11). A similar argument was rejected by the United States Court of Appeals for the Fourth Circuit in *McNeal v. Montgomery County, Md.*, 307 F.App'x 766, 771-72(4th Cir. Jan. 20, 2009):

> McNeal does not contest that the three year period is applicable, but argues that the Statute of Limitations for the state law claims should be equitably tolled during the time in which he was exhausting administrative procedures as to his Title VII claims, which arose from the same set of circumstances. This Court in *Shofer v. Hack Co.*, 970 F.2d 1316 (4th Cir. 1992) held that "[t]he rule in Maryland concerning equitable tolling of statutes of limitations 'can be fairly termed one of strict construction.'" Id. at 1320 (*quoting Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207 (1977)). The district court correctly held that the filing of McNeal's claim with the Office of Human Rights "does not toll the statute of limitations for claims that 'although related, and although directed to most of the same ends, are separate, distinct, and independent.'" *McNeal v. Montgomery County*, No. MJG-04-2984, slip op. at 10 (D.Md. Mar. 15, 2008) (unpublished) (*quoting Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)). *McNeal's claims for constructive discharge, tortious interference with contract and intentional infliction of emotional distress, although arising from the same set of circumstances, are completely independent from his Title VII claims.* Thus the time for filing a lawsuit as to these causes of action was not tolled while McNeal pursued his Title VII administrative remedies. McNeal was required to file suit within three years of January 2001, which he failed to do.

(emphasis added).

None of the state law claims in counts VIII through XIII hinged on any action taken by the EEOC. Plaintiff's additional argument that "Defendant was already aware and [on] notice[] of the charge of discrimination," (ECF No. 32, at 12), has nothing to do with the requirement that Plaintiff timely assert in a proper forum any related state law claims. *See, e.g., Wimbush v. Kaiser Foundation Health Plan of the Mid Atlantic States, Inc.*, Civ. Action No. TDC-14-0525, 2015 WL 2090654, at *8 (D.Md. May 4, 2015) ("[A]ny time Wimbush spent pursuing administrative remedies for her Title VII claims does not toll the statute of limitations for her related but separate claims."); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462-66 (1975) (holding that Title VII claims did not toll the governing state law statute of limitations applicable to a separate claim under 42 U.S.C. § 1981).

In her surreply memorandum, Plaintiff challenges the July 19, 2011 resignation date. (ECF No. 39-1, at 13). Defendant attached to its *opening* motion to dismiss or for summary judgment, however, a "Notice of Termination of Employment [Form]," which reflects that Maria Melendez resigned on July 19, 2011, and that the resignation became effective on August 2, 2011. (ECF No. 31-2). Plaintiff argues for the first time in her reply brief in support of her surreply:

> This exhibit alone creates a genuine dispute
> because it is contradictory and misleading
> in two different directions.   First, Exhibit
> No. 1 states July 19, 2011 as Plaintiff's
> "last day of work" and August 2, 2011 as
> "resignation effective date."   The Court
> should remember that July 19, 2011 is the
> date that the Defendant continuously affirms
> as the true date Plaintiff resigned from
> AEHS.   However, as the exhibit portrays,
> this cannot be confirmed.

(ECF No. 44, at 5).

The statute of limitations is an affirmative defense that ordinarily must be pleaded and proven by the party asserting it. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit.").   When the parties rely solely on the pleadings, the defense will only prevail if it categorically appears on the face of the pleadings that the statute of limitations has run.   *See Alexander v. City of Greensboro*, 801 F.Supp.2d 429, 445 (M.D.N.C. 2011) ("[A]n affirmative defense . . . may only be reached at the [motion for judgment on the pleadings] stage if the facts necessary to deciding the issue clearly appear on the face of the pleadings.").   Although Plaintiff was under no obligation to plead facts in the complaint to show the timeliness of her claims, and, on a motion to dismiss, her claims would not be dismissed unless the facts alleged in the complaint conclusively

showed that the statute of limitations has run, the result on summary judgment is different.   As explained above, Plaintiff could have but did not challenge the resignation notice until her surreply despite the fact that Defendant argued in its opening motion that Plaintiff resigned in July 2011, thus barring her state law claims.   In any event, whether Plaintiff is considered to have resigned on July 19, 2014 or August 2, 2011 is immaterial given the fact that she did not bring her complaint until August *19*, 2014, more than three years later. Plaintiff has not alleged any further acts of discrimination beyond July 2011, when she believes she was forced to resign.

Based on the foregoing, judgment will be entered on Counts VI through XIII of the second amended complaint because these claims are time-barred.

## III. Conclusion

For the foregoing reasons, the motion to dismiss or for summary judgment filed by Defendant will be granted in part and denied in part.   Plaintiff's motion for leave to file a surreply will be granted.   Plaintiff's motion to defer or deny summary judgment pursuant to Fed.R.Civ.P. 56(d) will be denied as moot. Defendant's motion to strike Plaintiff's Rule 56(d) affidavit also will be denied as moot.   A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge